1  PATRICIA BARBOSA (SBN 125865)
   SARA P. KUNKEL (SBN 260240)
2  **BARBOSA, METZ & HARRISON, LLP**
   139 Richmond Street
3  El Segundo, CA 90245
   Tel: (310) 414-9400
4  Fax: (310) 414-9200
   PBarbosa@bmhlegal.com
5  SKunkel@bmhlegal.com

6

7  Attorneys for Plaintiffs,
   ANGEL CASTELAN and MARVIN HUEZO

8

9                **UNITED STATES DISTRICT COURT**

10               **CENTRAL DISTRICT OF CALIFORNIA**

11

12 ANGEL CASTELAN and MARVIN     )  Case No.: CV12-05481 JFW (AGRx)
   HUEZO, individuals;           )
13                               )  **Civil Rights**
                                 )
14              Plaintiffs,      )  **COMPLAINT FOR INJUNCTIVE
15                               )  RELIEF AND DAMAGES** FOR
   vs.                           )  DISABILITY DISCRIMINATION IN
16                               )  VIOLATION OF TITLE III OF THE
17 UNIVERSAL STUDIOS, INC.,  a   )  AMERICANS WITH DISABILITIES
   Delaware Corporation; UNIVERSAL ) ACT AND CALIFORNIA'S CIVIL
18 STUDIOS L.L.C., a Delaware limited ) RIGHTS STATUTES (Cal. Health & Saf.
   liability corporation; NBCUNIVERSAL ) Code §19955 *et seq.;* Cal. Civ. Code §51
19 MEDIA L.L.C., a Delaware limited ) *et seq.* ; Cal. Civ. Code §54 *et seq.*)
20 liability corporation; and DOES 1 )
   through 10, Inclusive;        )
21                               )  **DEMAND FOR JURY TRIAL**
                                 )
22              Defendants.      )
23                               )

24

25

26

27

28

---

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES                                    1

Plaintiffs ANGEL CASTELAN and MARVIN HUEZO complain of Defendants UNIVERSAL STUDIOS, INC., UNIVERSAL STUDIOS L.L.C., NBCUNIVERSAL MEDIA L.L.C., and DOES 1 through 10, Inclusive, and allege as follows:

# I.   <u>INTRODUCTION</u>

1.     Universal Studios Hollywood ("Universal Studios") is a world-famous movie studio and theme park in Los Angeles, California.  Known as the "Entertainment Capital of L.A.," Universal Studios is one of Hollywood's oldest and most famous studios still used for motion picture filming and production.  In 1965, Universal Studios added its first major attraction and began its evolution to its current unique status as both a theme park and a fully functioning movie studio. Today, Universal Studios is one of the world's largest and most-visited theme parks, offering millions of visitors each year amusement rides; live entertainment; and tours of real, working movie studios and special effects stages.

2.     Directly adjacent to Universal Studios is the Universal CityWalk ("CityWalk"), a three-block entertainment, dining, and shopping center.  The CityWalk boasts some of Los Angeles' best restaurants, shops, and nightclubs, as well as a movie theatre and live entertainment venues.  On information and belief, CityWalk was opened to the public in 1993 and significantly expanded in 2000.  On information and belief, Universal Studios and Universal CityWalk are owned, operated and managed by Defendants UNIVERSAL STUDIOS INC., UNIVERSAL STUDIOS LLC and NBCUNIVERSAL MEDIA LLC.

3.     Universal Studios occupies a sprawling parcel of land nestled in the hills of Los Angeles.  It is separated into two areas known as the Upper Lot and the Lower Lot.  Each Lot houses multiple rides, shows, and attractions, as well as shops, restaurants, and concession stands.  Universal Studios is also home to several state-of-the-art roller coasters and rides.  One of the park's newest and most state-of-the-art

roller coasters is known as "The Revenge of the Mummy," an indoor roller coaster which opened to the public in 2004.

4.     Despite its stated commitment to providing unique, family-fun experiences to visitors of all ages, Universal Studios and Universal CityWalk were constructed and/or have failed to remove significant physical barriers to their facilities, including parking areas, restrooms, eating areas, and pedestrian paths of travel throughout the theme park and CityWalk, which deny persons with mobility disabilities the full and equal enjoyment of the goods, services, and facilities offered by Defendants to the general public. Additionally, Universal Studios has failed to make reasonable modifications to its policies and procedures to ensure that persons with disabilities are afforded access to its services and amenities – without exclusion or deterrence based on stereotypes of the capabilities of physically disabled persons such as Plaintiffs.  Specifically, Defendants are denying persons with amputated limbs access to their major theme park rides.  In so doing, Defendants have violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 *et seq.,* and related California laws.

5.     As a result of Defendants' discriminatory acts and omissions, Plaintiffs have suffered, and will continue to suffer, damages, and have been, and will continue to be prevented and/or deterred from accessing and using Defendants' goods, services, and facilities to the same extent as, and in a manner equal to, their able-bodied peers.  Through this lawsuit, Plaintiffs seek an injunction requiring Defendants to provide "full and equal" access to their public facilities for disabled persons as required by law and compensation for their injuries as the result of Defendants' discriminatory conduct and actions.

///

///

///

///

///

## II.   **JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 for violations of the ADA, 42 U.S.C. §12101 *et seq*.  This Court has supplemental jurisdiction over Plaintiffs' state claims, including but not limited to violations of California Health & Safety Code § 19955 *et seq*. the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq*.; and the Disabled Persons Act, Cal. Civ. Code §54 *et seq*.

7.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in the Central District and that Plaintiffs' causes of action arose in the Central District.

## III.   **PARTIES**

8.      Plaintiff MARVIN HUEZO ("Plaintiff Huezo") is, and at all times relevant herein was, a qualified individual with a physical "disability" as defined by Department of Justice regulation 28 C.F.R. §35.104 and California Government Code §12926.  Both of Plaintiff Huezo's legs were amputated after he was hit by a car while stopping to help a stranded motorist on the freeway.   Plaintiff Huezo cannot independently stand or walk without the use of prosthetics legs and/or a wheelchair at all times for mobility.  Plaintiff Huezo is unable to safely and independently use public facilities that are not designed, constructed or altered in compliance with applicable accessibility standards. Plaintiff Huezo is, and at all times relevant herein was, a resident of Los Angeles, California.

9.      Plaintiff ANGEL CASTELAN ("Plaintiff Castelan") is, and at all times relevant herein was, a qualified individual with a physical "disability" as defined under Department of Justice regulations 28 CFR § 36.104 and California Government Code § 12926.  Due to an electrical accident suffered as a child, both of Plaintiff

Castelan's forearms were amputated.  Despite being a double amputee, Plaintiff Castelan has trained himself to use his stumps to perform daily tasks so that he may live as fully and independently as he can. While Plaintiff has prosthetic arms, he does not use them in his daily life, as he has more function and control in the use of his stumps.  Plaintiff is, and at all times relevant hereto was, a resident of Los Angeles, California.

10.     On information and belief, Defendants UNIVERSAL STUDIOS INC., UNIVERSAL STUDIOS LLC and NBCUNIVERSAL MEDIA, LLC are the owners, operators and managers of Universal Studios and Universal CityWalk.

11.     Plaintiffs are informed and believes that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described. Plaintiffs will seek leave to amend his complaint when the true names, capacities, connections, and responsibilities of Defendants DOES 1 through 10, inclusive are ascertained.

### IV.     FACTS ON WHICH CLAIMS ARE BASED

12.     Plaintiff Castelan is an avid fan of Universal Studios and the CityWalk who has enjoyed the park's rides and attractions and the CityWalk's restaurants and other amenities for many years as an amputee.  Plaintiff Castelan has purchased

multiple Universal Studios annual passes as well as "front of the line" passes to better enjoy the amenities and rides.  The annual pass allows Plaintiff Castelan unlimited access to the park throughout the year, and the "front of the line pass" allows him to ride the roller coasters and see attractions without waiting in line.  Plaintiff Castelan has not purchased an annual pass this year due to his exclusion from some of his favorite rides. Plaintiff Castelan wishes to continue patronizing Universal Studios and the CityWalk, but is being deterred and excluded from doing so because of Defendants' discriminatory policies, which have deterred him from returning to Universal Studios and the CityWalk, and excluded him from enjoying the rides at the park.

13.     Plaintiff Castelan has visited Universal Studios and/or the CityWalk many times each year since approximately 2000.  Plaintiff routinely visits the park and CityWalk with his girlfriend, whom he met at Universal Studios, and his friends and family.  Plaintiff Castelan does not wear his prosthetic arms when visiting Universal Studios, as he uses them primarily for aesthetics, not functionality. Plaintiff Castelan was permitted to participate in all of the theme park's attractions – including roller coasters – without incident or complaint throughout the majority of his visits to Universal Studios until recently, when Defendants adopted a new discriminatory policy to exclude amputees from their amusement rides.

14.     In or around June 2004, Universal Studios opened a new indoor roller coaster ride known as The Revenge of the Mummy ("The Mummy").  On information and belief, The Mummy is a state-of-the-art roller coaster which cost Universal Studios approximately $40 million to build and install.  The Mummy is a steel, enclosed roller coaster ride in which passengers sit in a "mine car" and are fastened into the mine car with a heavy metal safety bar across their lap.  The entire ride lasts about 2 minutes.

15.     Plaintiff Castelan greatly enjoys riding The Mummy, as it is one of the only rides at Universal Studios geared to older adults.  Since The Mummy opened to

the public in 2004, Plaintiff Castelan has ridden the coaster approximately 5 to 6 times each time he visits Universal Studios.

16.     In the past when Plaintiff Castelan rode The Mummy, he would be seated in the mine car and fastened into the seat with the metal safety bar.  For six years – from 2004 to 2010 – Plaintiff Castelan was never denied participation on The Mummy ride because he was an amputee.  On information and belief, The Mummy ride has not been changed or altered since the last time he was permitted to ride this roller coaster.

17.     In or around October 2010, Plaintiff visited Universal Studios with his girlfriend and family.  They rode multiple attractions before heading to ride The Mummy.  Plaintiff and his group were buckled into the mine car, as usual, and waited as ride operators called the control room to obtain clearance for Plaintiff to ride the roller coaster.  This time, however, Universal Studios staff refused Plaintiff Castelan permission to ride The Mummy.  Ride operators told Plaintiff Castelan that he would not be permitted to ride The Mummy because he did not have arms and hands.  Plaintiff Castelan informed Universal Studios staff that he had ridden The Mummy many times before, and that he was never told he needed hands and arms to safely ride the rollercoaster.  Nonetheless, Universal Studios staff members refused to permit Plaintiff Castelan to ride The Mummy.  Plaintiff was pulled off of the ride with his girlfriend and family members in front of other riders and staff members.  Plaintiff was humiliated, embarrassed and confused as to why his disability disqualified him from being able to ride The Mummy as he had hundreds of times in past visits, and felt "handicapped" by the view Defendant's employees now had of him.

18.     After being removed from the ride, Plaintiff requested to speak to a supervisor to determine why he was not permitted to ride The Mummy after being permitted to ride The Mummy so many times before.  After approximately 20 minutes, a Universal Studios supervisor, whose name is not presently known to

Plaintiff, informed Plaintiff Castelan that Universal Studios now required individuals riding The Mummy to be able to grab onto the safety bar throughout the course of the ride.  Plaintiff pointed out that he had been able to ride The Mummy innumerable times prior without any incidents or complaints.  Plaintiff further pointed out that riders are not required to grasp the safety bar during the ride, and that there were no staff members positioned throughout the tracks monitoring who did and did not hold on to the safety bar.  Plaintiff was still not permitted to ride The Mummy, and he left Universal Studios with his girlfriend and his family without riding The Mummy.

19.     Plaintiff Castelan's next visit to Universal Studios was in October 2011 with his friend, Plaintiff Marvin Huezo.  As a wheelchair user, Plaintiff Huezo encountered numerous physical barriers to accessibility throughout the theme park as well as in the CityWalk, as described below.

20.     Plaintiffs approached the front of the line to board The Mummy's mine cars, but before Plaintiff Castelan was able to get into the cars, he was stopped by Universal Studios staff and informed that he could not ride the roller coaster because he did not have hands and arms and, therefore, was unable to grab the safety bar. Plaintiff Castelan tried to inform the staff that he had ridden many times in the past without incident, but was still not permitted to ride The Mummy.  Universal Studios staff members also told Plaintiff Huezo that he could not ride The Mummy because he did not have legs.  Plaintiff Huezo informed staff members that he did not have the same issue that Plaintiff Castelan did – namely, that he was able to grab the metal safety bar during the ride because only his legs were affected by his disability. Nonetheless, Universal Studios employees would not let either Plaintiff ride The Mummy.

21.     Plaintiffs requested and waited to speak with a supervisor, in hopes that they would be permitted to ride the roller coaster.  After a long wait, a supervisor, whose name is not currently known to Plaintiffs, informed Plaintiffs that Universal Studios' "new policy" required all riders to have "at least one arm and one leg" in

order to ride The Mummy.  Plaintiffs were turned away from the ride and left the park embarrassed, dejected, and frustrated that they could not ride one of the park's best rides, after trying to assure Universal Studios staff that riding the roller coaster would not put them in any risk of self-injury or injury to other riders.  Plaintiffs were summarily turned away from The Mummy based on the assumptions of Universal Studios staff that Plaintiffs could not safely ride The Mummy.  On information and belief, Defendants have failed to conduct an evaluation to determine the benefits of imposing a policy that denies access to persons unless they have "at least one arm and one leg." Plaintiffs allege that Defendants have based their refusal to permit double amputees to ride their amusement rides based on stereotypes and assumptions about the safety of disabled individuals to mainstream into public life.

22.     Plaintiffs allege that Defendants have instituted discriminatory policies and practices that deny Plaintiffs, and otherwise similarly situated disabled persons, the full and equal use of their facilities, and have failed to ensure that their policies and practices do not subject persons with disabilities like Plaintiffs to discrimination on the basis of speculation, stereotypes, and generalizations about their disability.

23.     While visiting Universal Studios in October 2011, Plaintiff Huezo, a wheelchair user, encountered barriers to accessibility that have denied him the full and equal use and enjoyment of Defendants' goods and services, including, but not limited to, the following:

**1. Universal Studios Barriers**

*A. Parking*

   1) Multiple accessible parking spaces are provided at the outdoor parking lot near the main entrance to Universal Studios; however, all parking spaces are located on a surface whose cross slope exceeds 2%, posing a risk of injury to persons using a wheelchair, walker or prosthetic legs; and

   2) The accessible parking spaces are missing the required "No Parking"

---

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES                                    9

wordage in the access aisle; are missing fine-related signage; and the signage uses the term "handicapped," in violation of the California Vehicle Code, failing to properly reserve accessible parking spaces for qualified disabled persons.

**B. Ticket Booths**

1) The ticket booth windows are located more than 34 inches above the floor. There are ticket booths with a lowered section; however, the lowered section's height also exceeds the maximum permitted of 34 inches above the floor, rendering them inaccessible to Plaintiff Huezo and other wheelchair users.

**C. Guest Services**

1) The guest services will-call windows are located more than 34 inches above the floor, rendering them inaccessible to Plaintiff Huezo and other wheelchair users; and

2) The interior service counter, where park visitors may obtain information regarding accessible rides and areas, is more than 34 inches high, with no lowered section, rendering it inaccessible to Plaintiff Huezo and other wheelchair users.

**D. Entry/Exit Gates**

1) The gates permitting entry and exit to the park do not have kick plates on the push side of the gates, posing a risk of injury to persons in wheelchairs, who could get caught on the door.

**E. Stroller and Wheelchair Rental**

1) The service counter at the stroller and wheelchair rental area is mounted more than 34 inches from the floor, rendering it inaccessible to persons in wheelchairs.

**F. Hollywood Photoland**

1) The path of travel near Hollywood Photoland has a drain at the base

of the ramp with cross slopes greater than 2%, posing a risk of injury to visitors with mobility impairments.

**G. Hollywood Grill**

    1) No accessible tables are provided in the seating and dining area, rendering this entire area inaccessible to wheelchair users.

**H. House of Horrors**

    1) The path of travel to the entry ramp to the House of Horrors attraction crosses a grate which has vertical changes in level exceeding ½ inch, posing a risk of injury to persons with mobility impairments; and

    2) The entry ramp lacks wheel guides, posing a risk of injury to wheelchair users.

**I. Blues Brothers Attraction**

    1) The designated accessible seating area at the Blues Brothers attraction does not provide adjacent companion seating; and

    2) The tree grate near the attraction has vertical changes in level exceeding ½ inch, posing a risk of injury to visitors with mobility impairments.

**J. Cartooniversal Shop and Candy Shop**

    1) The walkway between the Cartooniversal shop and the Candy shop has a cross slope exceeding 2% between the buildings, posing a risk of harm to visitors with mobility impairments.

**K. Mario's Meat and Poultry**

    1) The faux cobblestone near Mario's Meat and Poultry is not flat or stable, producing uncomfortable jarring and significant vibration when wheeled over in a wheelchair due to changes in vertical level greater than ¼ inch.

**L. All Star Shoot Out**

    1) The drain at the queue area to the All Star Shoot Out has a cross slope

exceeding 2%, posing a risk of injury to persons with mobility disabilities.

**M. Flintstones Grill**

    1) The service counter and ordering window is mounted more than 34 inches from the floor, rendering it inaccessible to persons in wheelchairs; and

    2) The tables provided in the dining area are not accessible to wheelchair users, rendering this entire area inaccessible to persons in wheelchairs.

**N. Cantina**

    1) The tables provided in the dining area are not accessible to wheelchair users, rendering this entire area inaccessible to persons in wheelchairs.

**O. Cinnabon**

    1) The tables provided in the dining area are not accessible to wheelchair users, rendering this entire area inaccessible to persons in wheelchairs.

**P. Path of travel near Shuttle Elevator to Lower Lot**

    1) The grate in the path of travel near the shuttle elevator has a cross slope exceeding 2%, posing a risk of injury to visitors with mobility impairments.

**Q. Shuttle**

    1) The wheelchair ramp at the Lower Lot shuttle stop lacks wheel guide rails, posing a risk of injury to wheelchair users.

**R. Binoculars**

    1) The binoculars on the Upper Lot which are provided for visitors at various locations are not accessible to wheelchair users because they are mounted too high for wheelchair users to reach.

///

**S.  The Mummy - Exterior**

    1) The curb ramp providing access to this attraction does not have a flush transition at the bottom of the ramp, posing a risk of injury to wheelchair users;

    2) The ramp in the path of travel to the ride has a handrail only on one side;

    3) The entry gates to the ride lack kick plates or solid bottoms, posing a risk of injury to wheelchair users;

    4) The slope of the path of travel along the queue line exceeds 5%, and no handrails are provided; and

    5) The exit gates lack kick plates or solid bottoms, posing a risk of injury to wheelchair users.

**T.  Jurassic Café**

    1) There are no accessible tables provided in the Jurassic Café dining area, rendering this entire area inaccessible to wheelchair users.

**U.  Cove Café**

    1) There are no accessible tables provided in the Jurassic Café dining area, rendering this entire area inaccessible to wheelchair users; and

    2) The ramp between the upper and lower seating areas lacks handrails, posing a risk of harm to visitors with mobility disabilities.

**V.  Men's Restroom near Simpsons Attraction**

    1) The hot water pipes at the lavatories are not insulated, posing a risk of injury to wheelchair users; and

    2) The door to the accessible stall does not provide adequate strike-side clearance at the pull side of the door, rendering it difficult to use by wheelchair users.

///

*///*

**W. Studio Tour**

    1) The drain in the path of travel near the elevator to the Lower Lot has a cross slope exceeding 2%.

**X. Men's Restroom Near Studio Tour**

    1) The automatic hand dryer is mounted too high for use by persons in wheelchairs.

**Y. Palace Theatre**

    1) The storm drain in the path of travel near the Palace Theatre has grate openings more than ½ inch wide, posing a risk of injury to persons with mobility disabilities.

**Z. Mel's Diner, International Foods, and Coke Soak**

    1) No wheelchair accessible seating is provided at these dining areas, rendering the entire area inaccessible to wheelchair users.

**AA. Entrance to Gibson Amphitheatre**

    1) On information and belief, the entrance to the Gibson Amphitheatre from Universal Studios has an excessively steep slope, and no handrails are provided, posing a risk of injury to visitors with mobility disabilities;

    2) There is no signage at the Universal Studios entrance directing visitors to the location of an accessible entrance; and

    3) The ticket window in the CityWalk area is mounted more than 34 inches from the floor, rendering it inaccessible to persons in wheelchairs.

**2. <u>CityWalk Barriers</u>**

    24.    While visiting CityWalk during his visit to Universal Studios in October 2011, Plaintiff Huezo encountered physical barriers to accessibility that have denied him the full and equal use and enjoyment of the CityWalk's goods and services,

including, but not limited to, the following:

    **A.**      ***Paths of Travel***

        1) The path of travel along the entire length of the walkway throughout the CityWalk has cross slopes exceeding 2% due to improperly configured storm drains, posing a risk of harm to persons with mobility disabilities; and

        2) The inclined walkway near the Dodger's Clubhouse has a running slope exceeding 5% without handrails, rendering it inaccessible and dangerous to use by persons with mobility disabilities.

    **B.**      ***Men's Restrooms near Fossil Store***

        1)  The door to the men's restrooms near the Fossil Store in the CityWalk lacks accessibility signage;

        2) There is no pull handle on the exterior side of the accessible stall door;

        3) The toilet seat cover dispenser in the accessible stall is mounted so as to obstruct the grab bar; and

        4) The paper towel dispensers are mounted too high to be accessible by persons in wheelchairs.

    **C.**      ***Panda Inn Restaurant***

        1) The ramp to the exterior seating area has a running slope exceeding 5% and no handrails are provided, posing a risk of injury to persons with mobility disabilities.

    **D.**      ***Curious George Parking Area***

        1) The passenger loading area has a pothole in the path of travel, posing a risk of injury to people with mobility disabilities; and

        2) The accessible parking spaces in row P1 lacks appropriate fine-related signage.

    **E.**      ***Men's Restrooms near Curious George Parking***

1)  The required accessibility-related signage is lacking and improperly mounted; and

2) No insulation is provided under the lavatories, posing a risk of injury to persons with mobility disabilities.

**F.**    ***Drinking Fountain near Curious George Parking***

1)  The drinking fountain is not located in an alcove and lacks wing walls on both sides, rendering it inaccessible to persons in wheelchairs.

**G.**    ***Jurassic Parking Area***

1) The ramp to the Jurassic parking area lacks wheel guides, posing a risk of injury to wheelchair users; and

2) The parking signs contain improper language as prohibited by the California Vehicle Code.

**H.**    ***Accessible Parking Area 1K***

1) One of the designated accessible parking spaces has the access aisle improperly installed on the driver's side of the space, rendering it difficult to use by disabled persons using a passenger side lift. and

2) The parking spaces lack required accessibility-related signage.

**I.**    ***Accessible Parking Area 1L***

1) The parking spaces lack required accessibility-related signage.

**J.**    ***Men's Restrooms near Jurassic Parking Area***

1) Improper and/or inadequate signage is provided at the restrooms;

2) The lavatory pipes are not insulated, posing a risk of injury to wheelchair users;

3) No pull handles are provided at the accessible toilet stall door;

4) The toilet paper dispenser is mounted too far from the rear wall, rendering it difficult or impossible to use by persons with mobility disabilities; and

5) The restroom's mirrors are mounted too high to be utilized by persons in wheelchairs.

25.     Plaintiffs want to patronize Universal Studios and the Universal CityWalk in the future, as they have in the past.  They enjoy the rides, the multiple film studios, live entertainment and attractions at Universal Studios and CityWalk's restaurants, movie theatres, and shops.  Until the barriers at Universal Studios and the CityWalk are removed, and the discriminatory policies are changed, Plaintiffs will continue to suffer discrimination by being excluded and deterred from returning to Universal Studios and the CityWalk, and will continue to be denied full and equal access to and use of the same goods, services, facilities, privileges, advantages, and accommodations offered by Defendants to the general public.

## V.     INJURY

26.     As the result of Defendants' acts and omissions as herein alleged, Plaintiffs have suffered injuries and has been prevented and deterred from the full and equal use and enjoyment of the goods, services, facilities and accommodations of Universal Studios and the CityWalk. Until Defendants remove physical barriers and modify discriminatory policies so that persons with disabilities may use them on a "full and equal" basis, Plaintiffs will continue to suffer discrimination and risk of injury and/or be prevented and deterred from safely accessing Universal Studios and the CityWalk in a manner that is equivalent to their able-bodied peers. Plaintiffs have suffered discrimination, deterrence, humiliation, pain, emotional distress, and embarrassment, all to their damage. The above-mentioned barriers and discriminatory policies are ongoing, and constitute a continuing violation of Plaintiffs' rights under the ADA and related State civil rights statutes for which Defendants are jointly and severally liable.

///

///

///

# VI.    FIRST CAUSE OF ACTION

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – TITLE III
### 42 USC §12181 *et seq*

27.    Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 26 of this Complaint.

28.    In 1990 the United States Congress found that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities", and that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; that the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; and that the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101.

29.    Congress stated as its purpose in passing the Americans with Disabilities Act, 42 U.S.C. §12101(b):

It is the purpose of this act:

(1)    to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2)    to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3)     to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and

(4)     to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities.

30.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities." 42 U.S.C. §12181 *et seq.* Among "private entities" which are considered "public accommodations" for purposes of this title are hotels (42 U.S.C. §12181(7)(A)).

31.     Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

32.     Defendants have discriminated against Plaintiffs on the basis of their disability in violation of Title III of the ADA and its implementing regulations. Defendants' discriminatory conduct includes, but is not limited to:

A.  Discriminatory exclusion and/or denial of goods, services, facilities, privileges, advantages, accommodations, and/or opportunities;

B.  Provision of goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals;

C.  Failing to design and/or construct facilities built for first occupancy after January 26, 1993 so that they are readily accessible to and usable by individuals with disabilities in accordance with the ADA Standards for Accessible Design (ADA Standards), 28 C.F.R. pt. 36, app. A. 42 U.S.C.

§ 12183(a)(1); 28 C.F.R. §§ 36.401, 36.406(a);

D. Since January 26, 1992, failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facilities are readily accessible to and usable by individuals with disabilities in accordance with the ADA Standards. 42 U.S.C. § 12183(a)(2); 28 C.F.R. §§ 36.402, 36.403, 36.406(a);

E. Since July 26, 1991, failing to comply with the ongoing obligation to remove barriers, and/or provide path of travel upgrades to remove barriers at facilities where such removal is "readily achievable." 42 U.S.C. § 12182(a)(2)(A)(iv); 28 C.F.R. § 36.304.

F. Imposing eligibility criteria that screen out individuals with disabilities from the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages or accommodations and imposing safety requirements that are not based on actual risks but rather on speculation, stereotypes, or generalizations about individuals with disabilities. 28 C.F.R. § 36.301(a) – (b); and

G. Failing to make individualized assessments, based on reasonable judgments and objective evidence, to determine whether amputees and other individuals with disabilities pose a direct threat to the health and safety of others. 28 C.F.R. § 36.208.

33.    On information and belief, Universal Studios, the CityWalk, and their related facilities underwent construction and/or alterations after January 26, 1992 that triggered access requirements under the ADA – Title III.

34.    Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188 and 42 U.S.C. § 12205, Plaintiffs pray for judgment as set forth below.

## VII.   SECOND CAUSE OF ACTION
### Violation of Cal. Health & Saf. Code § 19955 *et seq*.

35.     Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 34 of this Complaint, and incorporate them herein as if separately repled.

36.     California Health & Safety Code §§ 19955 et seq. was enacted "[t]o ensure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of Chapter 7 (commencing with §4450) of Division 5 of Title 1 of the Government Code."  Such public accommodations are defined as any "building, structure, facility, complex, or improved area that is used by the general public…," and includes restaurants and related sanitary facilities, shopping centers and related sanitary facilities, and curbs and sidewalks intended for public use. California Health & Safety Code § 19955.

37.     On information and belief, Universal Studios, the CityWalk and their related facilities underwent construction and/or alterations after January 1, 1982 that triggered access requirements under Title 24-2.  Pursuant to Title 24-2, compliance with disabled access building standards and specifications is required whenever public accommodations, such as Defendants' facilities, undergo an "alteration, structural repair or addition."

38.     Pursuant to the remedies, procedures, and rights set forth in Health & Safety Code § 19953, Plaintiffs pray for judgment as set forth below.

## VIII.  THIRD CAUSE OF ACTION
### Violation of Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*

39.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40.     Universal Studios and the CityWalk are business establishments and, as such, must comply with the provisions of the Unruh Act, Cal. Civ. Code, § 51, *et seq*.

41.     The Unruh Act guarantees, <u>inter alia</u>, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or

services in all business establishments of every kind whatsoever within the jurisdiction of the State of California.  Cal. Civ. Code, § 51(b).

42.     The Unruh Act also provides that a violation of the ADA, or of California state accessibility regulations, is a violation of the Unruh Act.  Cal. Civ. Code, § 51(f).

43.     Defendants have violated the Unruh Act by, <u>inter alia</u>, denying, or aiding or inciting the denial of, Plaintiffs' rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered at Universal Studios and/or the CityWalk.

44.     Defendants have also violated the Unruh Act by denying, or aiding or inciting the denial of, Plaintiffs' rights to equal access arising from the provisions of the California state accessibility regulations and the ADA.

45.     Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 52, Plaintiffs pray for judgment as set forth below.


## IX.    FOURTH CAUSE OF ACTION
### Violation of Cal. Disabled Persons Act, Cal. Civ. Code § 54 *et seq.*

46.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.     Universal Studios, Universal CityWalk and their facilities are places of public accommodation and/or places to which the general public is invited and, as such, they are obligated to comply with the provisions of the California Disabled Persons Act ("CDPA"), Cal. Civ. Code, § 54, et seq.

48.     The CDPA guarantees, inter alia, that persons with disabilities have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places. Cal. Civ. Code § 54.

49.    The CDPA also guarantees, inter alia, that persons with disabilities are entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of covered entities. Cal. Civ. Code § 54.1(a)(1).

50.    The CDPA also provides that a violation of the ADA is a per se violation of CDPA, Cal. Civ. Code § 54.1(d).

51.    Defendants have violated the CDPA by, inter alia, denying and/or interfering with Plaintiffs' right to full and equal access as other members of the general public to the accommodations, advantages, or facilities of Universal Studios, the CityWalk and their facilities, by denying them access due to their physical disabilities.

52.    Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code §§ 54.3 and 55, Plaintiffs pray for judgment as set forth below.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

1.    That this Court issue an injunction pursuant to Title III of the ADA and Plaintiffs' related state law claims:

a. Ordering Defendants to alter their facilities to make such facilities readily accessible to and usable by individuals with disabilities;

b. Ordering Defendants to modify their policies and procedures to ensure that they do not arbitrarily and capriciously discriminate against persons with disabilities; and

c. Prohibiting operation of Defendants' public accommodations and facilities until they provide full and equal access to physically disabled persons, and requiring that such access be immediately provided.

2.    That this Court award general, compensatory, and statutory damages

1   pursuant to the Unruh Act and/or, in the alterative that this Court award damages

2   pursuant to the California Disabled Persons Act in an amount within the jurisdiction

3   of this court, and that these damages be trebled according to statute;

4          3.     That this Court award special and consequential damages according to

5   proof;

6          4.     That this Court award attorneys' fees, litigation expenses and costs of

7   suit, pursuant to Title III of the ADA, 42 U.S.C. § 12205; California Civil Code §§

8   52, and 55; California Health & Safety Code § 19953; and California Code of Civil

9   Procedure § 1021.5;

10          5.     Such other and further relief as the Court may deem just and proper.

11

12

13   Dated: June 22, 2012              **BARBOSA, METZ & HARRISON, LLP**

14

15                          By:   _P Barbosa_____

16                                PATRICIA BARBOSA

17                                SARA P. KUNKEL
                                  Attorneys for Plaintiffs, ANGEL CASTELAN
18                                and MARVIN HUEZO

19

20

21                          **DEMAND FOR JURY TRIAL**

22          Plaintiffs hereby demand a jury for all claims for which a jury is

23   permitted.

24

25   Dated: June 22, 2012              **BARBOSA, METZ & HARRISON, LLP**

26

27                          By:   _P Barbosa_____

28                                PATRICIA BARBOSA

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES                                    24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SARA P. KUNKEL
Attorneys for Plaintiffs, ANGEL CASTELAN
and MARVIN HUEZO

PATRICIA BARBOSA (SBN 125865)
SARA P. KUNKEL (SBN 260240)
BARBOSA, METZ & HARRISON, LLP
139 Richmond Street
El Segundo, CA 90245
Tel: (310) 414-9400; Fax: (310) 414-9200

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL CASTELAN and MARVIN HUEZO, individuals;<br><br>PLAINTIFF(S)<br><br>v.<br><br>UNIVERSAL STUDIOS, INC., a Delaware Corporation; (See Attachment for Additional Parties)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV12-05481** JFW (AGRx)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, Patricia Barbosa and Sara P. Kunkel , whose address is 139 Richmond Street, El Segundo, CA 90245 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Dated: ____JUN 2 2 2012____

Clerk, U.S. District Court

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                     SUMMONS

## ATTACHMENT

Defendants Continued:

UNIVERSAL STUDIOS L.L.C., a Delaware limited liability corporation;
NBCUNIVERSAL MEDIA L.L.C., a Delaware limited liability corporation; and
DOES 1 through 10, Inclusive;

PATRICIA BARBOSA (SBN 125865)
SARA P. KUNKEL (SBN 260240)
BARBOSA, METZ & HARRISON, LLP
139 Richmond Street
El Segundo, CA 90245
Tel: (310) 414-9400; Fax: (310) 414-9200

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL CASTELAN and MARVIN HUEZO, individuals;<br><br>PLAINTIFF(S)<br><br>v.<br><br>UNIVERSAL STUDIOS, INC., a Delaware Corporation; (See Attachment for Additional Parties)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV12- 05481 JFW (AGRx)<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within  __21__  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney,  _Patricia Barbosa and Sara P. Kunkel_ , whose address is  _139 Richmond Street, El Segundo, CA 90245_ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

JUN 2 2 2012

Clerk, U.S. District Court

**JULIE PRADO**

Dated: _____

By: _____
Deputy Clerk

1154

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                          **SUMMONS**

# <u>ATTACHMENT</u>

Defendants Continued:

UNIVERSAL STUDIOS L.L.C., a Delaware limited liability corporation;
NBCUNIVERSAL MEDIA L.L.C., a Delaware limited liability corporation; and
DOES 1 through 10, Inclusive;

BY FAX

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ANGEL CASTELAN and MARVIN HUEZO, individuals;

**DEFENDANTS**
UNIVERSAL STUDIOS, INC., a Delaware Corporation; UNIVERSAL STUDIOS L.L.C., a Delaware limited liability corporation; NBCUNIVERSAL MEDIA L.L.C., a Delaware limited liability corporation; and DOES 1 through 10

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
PATRICIA BARBOSA (SBN 125865); SARA P. KUNKEL (SBN 260240)
BARBOSA, METZ & HARRISON, LLP; 139 Richmond Street. El Segundo, CA 90245. Tel: 310-414-9400; Fax: 310-414-9200

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No       ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Denial of civil rights of disabled persons in violation of Title III of The ADA AND California Civil Rights Statutes (42 U.S.C. § 12182 et seq).

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | ☐ 462 Naturalization Application | ☒ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV12- 05481

**FOR OFFICE USE ONLY:**    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                          CIVIL COVER SHEET                          Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County as to all named Plaintiffs | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County as to all named Defendants | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
<u>Note</u>: In land condemnation cases, use the location of the tract of land involved .

X. SIGNATURE OF ATTORNEY (OR PRO PER): *P Barbosa*     **Date** June 22, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |